THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of OFFICER CANNIANO, Complainant, *v.* ALEXANDER KUPAS, Defendant.

City Magistrates' Court of New York, Borough of Queens, Sitting as a Court of Special Sessions, June 9, 1939.

*William C. Chanler, Corporation Counsel* [*Charles C. Weinstein* and *James Hurley* of counsel], for the complainant.

*Raymond P. McNulty* [*Richard P. Charles* of counsel], for the defendant.

HOCKERT, C. M. Defendant is charged with operating a restaurant in violation of section 149 of the Sanitary Code of the City of New York. This section requires that no person may conduct, maintain or operate a restaurant without a permit issued by the board of health. Restaurant, in said section, is defined to " include every buffet, lunch room, grill room, lunch counter, dining room of hotel, and every other public place where food is served, sold and consumed on the premises, every lunch counter in a saloon where food is sold or given away, and all kitchens appurtenant thereto or connected therewith."

The defendant is employed by a corporation known as Swanky Franky, Inc., and was operating one of their motor vehicle trucks without a permit. The question involved is whether this vehicle comes within the scope of section 149 of the Sanitary Code and requires a permit from the board of health to operate.

The vehicle is exceedingly compact, is in effect a small coupe and may be described as follows: within the vehicle there is a seat for the driver; directly in front of him there is a grill operated by gas from a tank under the driver's seat; alongside of the grill is a water cooler with a faucet at the bottom. At the left of the driver, in the front, there is another cooler where cold drinks are contained. Under the driver's seat there is space for rolls. In addition thereto the driver carries frankfurters, instant coffee, and orangeade and other drinks in bottles. The manner of operation is as follows: The operator pulls up on private property; the steering wheel is removed. The driver lights a grill and places thereon frankfurters, opens the window of the vehicle and fastens to the open window a tray. As customers come he serves the frankfurters on rolls and makes coffee on the grill by heating water, putting the hot water into a paper cup and adding instant coffee thereto. Paper napkins are supplied to the customers, and at no time does the operator's fingers touch the food, having implements for that purpose. He is also prepared to serve cold drinks. The operator carries three towels, and, if necessary, can use the running water for the purpose of washing his hands. The operator has no toilet facilities or other method of cleansing his hands and states that he uses nearby filling stations for that purpose.

The Sanitary Code must be construed liberally to achieve the purpose for which it was designed, and that is for the protection of public health. While the use of this vehicle is presently limited to the serving of frankfurters, the arrangement thereof and the facilities there afforded, do not limit it to that and various foods could be prepared therein and served. The term " restaurant " in the Sanitary Code is given the broadest possible interpretation. This term was first used for an establishment in Paris about 1765. The first coffee house in the United States was opened in 1700. The Encyclopedia Britannica points out that in the United States " The word restaurant in America was first applied to the dining rooms of the better class hotels and to a few high-class ala carte restaurants. As establishments of different types came into being their character was fixed by some such expression as coffee-house, as in England. Then came cafes, lunch rooms, dairy lunch rooms, cafeterias, tea rooms, waffle houses, fountain lunches, sandwich shops and many others, all included in the general use of the word restaurant."

As far as I can find, this question has not been decided in any of the courts and it is true, as the defendant says, that at the time the Sanitary Code was drawn this sort of vehicle had not been contemplated. The statute, however, is drawn broad enough to include the operation of a vehicle of this type. While it is perfectly true that the food is not consumed within the vehicle itself, yet in the normal procedure it is consumed within the area adjacent thereto. The preparation of the frankfurters and the coffee on the grill make that a kitchen, for a kitchen has been defined as a place where food is prepared. This vehicle must be construed as a combination of both, and the defendant, therefore, requires a permit from the board of health, and not having one, is guilty as charged.