Patrick J. Picariello, J.
Action brought by plaintiffs to recover for property damage sustained by them as a result of defendant’s negligence.
Briefly, the cause is predicated upon (1) negligence on the part of the defendant in maintaining its plumbing fixtures in the subject premises “in a defective, rotten and worn-out condition, causing them to break and burst ” and (2) defendant’s failure to take prudent and reasonable precautions to protect the subject premises so as to prevent vandalism and the entry of trespassers.
Plaintiffs had been tenants for approximately 30 years prior to the happening of the occurrences hereinafter described, occupying apartment No. 7 on the second floor of premises located at 219 East 106th Street, New York City. The subject premises consisted of'a six-story walk-up and housed 32 apartments, including two store premises on the street level which had also been occupied by tenants for residential purposes. About two or three years prior to April, 1957, the City of New York, in one of its preliminary steps to effect a neighborhood transition, condemned an area of three square blocks, consisting of approximately 80 buildings wherein were housed between 2,500 and 3,000 tenants. The subject premises were included in said area.
The services of the residential superintendent in the subject premises, for fiscal or other reasons, were dispensed with about five or six months prior to April, 1957, at which time there still remained five or six tenants, including the plaintiffs, in actual possession and living in apartments in the demised premises.
It appears, from the record that both the apartment immediately above that occupied by the plaintiffs and the store immediately below had been vacated for quite some time prior to the two occurrences hereinafter described.
On April 22, 1957, at about 6:30 a.m., plaintiff wife, upon arising and entering into the kitchen in her apartment, noticed dirty, filthy and rusty water shooting up from the drain in the kitchen sink to the ceiling. A report of this incident was immediately made by plaintiff husband to the defendant’s agent on the site premises. The testimony further indicates that an inspection made a few hours later by defendant’s agents, or employees, revealed that the door to the store premises directly *805 beneath plaintiffs ’ apartment had been broken into by vandals; these intruders thereby gained entry into the store premises, wherein they stopped or clogged the drain in the sink, preventing the water from flowing in its usual downward course and causing it to shoot upward and into plaintiffs’ apartment through the drain in plaintiffs ’ kitchen sink. Plaintiffs testified that damage to their property as a result of this incident was minimal and negligible.
On May 13, 1957, at about 4:30 p.m., another such incident occurred in plaintiffs ’ apartment which resulted in great, if not complete, damage to plaintiffs’ furniture, furnishings, clothing and personal effects. In fact, the water damage was so devastating, and their apartment became so water-logged, that the same was rendered uninhabitable for a period of approximately one week. Investigation again made by defendant’s agents, or employees, revealed that the door to the vacated apartment immediately above plaintiffs ’ had been broken, illegal access had thus been obtained into it and some water pipes had been broken, thereby causing the water to flow onto the floor and through the ceiling of plaintiffs’ apartment and into their apartment below, resulting in great and substantial damage.
Defendant offered evidence as to security procedures taken by it to protect the remaining tenants in these condemned buildings from such acts of vandalism. It produced two assistant managers, one of whom testified as to the nature, quality and quantity of the security procedures in effect at the time of the two occurrences above mentioned. It was customary, so he testified, for the defendant to cause the doors to the vacated apartments to be nailed down so as to prevent illegal ingress thereto; to instruct housing people to check daily the 80 buildings rendered vacant in anticipation of the neighborhood transition ; that six or eight Burns guards were always available who had liaison with defendant’s securitiy force; and that squad cars of the local police precinct were always available in the event some untoward incident took place. The other assistant manager testified that he had never received any complaints from the plaintiffs with respect, to any damage sustained by them between April, 1957, and July,- 1957, when plaintiffs vacated their apartment. This witness was in charge of the block in which the subject premises were located. This testimony taxes the credulity of the count when considered in the light of plaintiffs’ testimony that the water damage was so great that the very apartment which they occupied was thereby rendered uninhabitable for approximately one week. He further testified that he visited the apartment occupied by the plaintiffs *806 three days after they moved and found no furniture or furnishings in said apartment. Plaintiffs had testified that when they did move in July, 1957, they left everything behind except two barrels filled with pots, pans and kitchenware, the frigidaire and gas range and some chairs which they had repaired at the cost of $75. If the court attaches any believability to this witness’ testimony, then there must have been another illegal act committed by trespassers in the subject premises, that is, a burglary, in the plaintiffs’ apartment after they had vacated it and prior to this witness’ inspection.
Defendant also produced two maintenance employees, one of whom testified that he had never checked the plumbing fixtures, and the other who testified that he visted the vacant apartment above the plaintiffs’ immediately after the occurrence of May 13, 1957 and found the door open, water pipes broken and water on the floor of said apartment between ti-to %-inch in depth.
There was no testimony as to actually when, where or how the Burns guards and defendant’s security force were so available; there was no testimony of any check having actually been made by any housing employees, as they may have been instructed, by whom, when or where; there was no testimony as to who actually nailed down the doors to the vacated apartments, or when and if these doors had actually been nailed down, and there was no testimony that this so-called protective procedure was in effect around the clock or merely during daylight'hours.
Be that as it may, the whole congeries of evidentiary facts and inferences in this case present the typical combination relative-to alleged negligence that is submitted to Judges every day, and although it may be true that the bounds of actional negligence limit the legal responsibility of a defendant to those damages which it reasonably could have foreseen to be within the scope of the risk created by his act or by his omission to act (Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339), the test being the reasonable foreseeability of the risk, reasonable foresight being the only requirement, not prophetic vision (Nucci v. Warshaw Constr. Corp., 13 A D 2d 699, affd. 12 N Y 2d 16); yet, under the circumstances of this case, reasonable foresight, especially after the first incident, dictated the taking of extra precautions. Prophetic vision was not required.
The issue in this case is the failure of the defendant to take prudent' and reasonable precautions to protect the subject premises and prevent the entry of trespassers and vandals. Because of the difficulty of proving negatives, the possibility or probability of defendant’s negligence may not be categorically *807 established, but if there is any such evidence of defendant’s negligence in this case, it is clearly manifested by the defendant’s failure to supplement or systematize its security procedure after the incident of April 22, 1957, so as to prevent or insure against a recurrence thereof. This incident should have placed the defendant on guard that its security procedure was feckless and inadequate.
Defendant relies on the case of Cosgrove v. State of New York (277 App. Div. 596) wherein the court held the defendant landlord not liable where acts of third parties in use of equipment are the immediate cause of damages; the theory of this is 'that the intervening act of the third party is the proximate cause of the damage.
The case at bar is easily distinguishable. In the Cosgrove case the damages were caused by the way in which a tenant occupying the premises immediately above the plaintiff used a facility within his control which was otherwise safe enough. Even in that case, the court distinguished between such a situation and the danger created from a defect in a facility controlled by the landlord. However, we are not here concerned with the use of any facility in the control of either the defendant or of any tenant. We are here concerned with, first, the defendant’s failure to provide reasonable precautions to protect the subject premises from vandalism since such precautions were found to be wanting and inadequate by the act of vandalism of April 22, 1957, and, second, its failure to supplement .said precautions to prevent or insure against the recurrence of the act of vandalism on May 13, 1957.
The court finds that the defendant violated its duty to provide reasonable supervision to guard against a recurrence of vandalism and the wrongful conduct of others under all the circumstances of the case. Inadequate security is no security. The lack of due care in this case was a substantial factor in bringing about the incident which caused damages to plaintiffs’ property on May 13, 1957.
Much to do was made by the defendant as to the variances existing between plaintiffs’ bill of particulars and their oral testimony with respect to the items, their cost, and the amount of damages claimed. These variances, the court finds, are not due to artificial memory or human frailties, but can be explained by the foibles in plaintiffs’ memory and present recollection caused by the antiquity of the claims and the age of the plaintiffs. The difficulty of ascertaining damages does not excuse their determination (1 New York Law of Damages, § 80, p. 139); nor does uncertainty as to amount preclude recovery *808 (Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 209); and mathematical certitude is unnecessary, the only requisite being a reasonable basis for the computation of approximate damages (Eastman Co. v. Southern Photo Co., 273 U. S. 359, 379; Duane Jones Co. v. Burke, 306 N. Y. 172, 192; Mills Studios v. Chenango Realty Corp., 15 A D 2d 138; Slater v. Kane, 275 App. Div. 648; 15 Am. Jur., Damages, § 21, pp. 412-413; Restatement, Contracts, § 331).
The value of household goods is determined by their real value to the owner and not their market value. Practically all of the furniture in the apartment had been purchased new two or three years before the incident of May 13, 1957. Plaintiffs should be allowed to recover the value to them based on their actual money loss, all the circumstances and conditions considered, resulting from their deprivation of the use of said property. None can gainsay the fact that these plaintiffs could reasonably have anticipated the continued use of the damaged furniture and furnishings for many years and also of their clothing and personal effects for some time. (See Lake v. Dye, 232 N. Y. 209, 214; Barker v. Lewis Stor. & Transfer Co., 78 Conn. 198; Green v. Boston & Lowell R. R. Co., 78 Mass. 221; 1 Sedgwick, Damages [9th ed.], p. 504, §§ 250, 251; Sutherland, Damages [4th ed.], §§ 1109-1117.)
The court is of the opinion that plaintiffs have sustained their burden of proof of producing sufficient evidence to form a basis for an estimate of damages with some degree of exactness under all of the circumstances of this case. (Haughey v. Belmont Quadrangle Drilling Corp., 284 N. Y. 136, 142.)
After trial, judgment for plaintiffs against defendant for $1,750, with costs.