John S. Lockman, J.
The information alleges a violation of section X-1.14 of article 7 of the Town of Hempstead Building *175 Zone Ordinance in that, “ the defendants did conduct the subject premises as a place of amusement; to wit, a dance hall with music and dancing therein without obtaining the necessary special use permit pursuant to Section Z-5.0, Subdivision C-6 of Article 12.”
Pertinent language of the Building Zone Ordinance provides:
" Article 7
‘ ‘ Business Districts
“ Sec. X-1.0. In a business district the following regulations shall apply:
‘ ‘ A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes and for no other: * * *
“ Sec. X-1.8. Restaurant other than a diner, lunch wagon, drive-in-restaurant, drive-in-luncheonette, drive-in lunch counter or drive-in refreshment stand. * * *
“ Sec. X-1.14. special uses: Special uses when approved by the Board of Appeals pursuant to Article 12, Section Z-5.0.”
“ Article 12
“ Board of Appeals * # *
“ The Board of Appeals may, after public notice and hearing, permit the following uses in the districts designated: * * *
“ c. In a Business District: * * *
‘' 6. Place of amusement or public assembly. * * *
‘ ‘ 14. Diners, lunchwagons, drive-in restaurant, drive-in luncheonettes; drive-in lunch counter or drive-in refreshment stand;
“ 15. Any use of the same general character as any of the uses expressly permitted in a business district by this Ordinance ”.
pacts
The only testimony offered by the People was that of a Building Inspector who described his observations when he visited the subject premises at 11:00 p.m. on January 6, 1967, the time of the alleged violation. He observed about 200 people, 100 of which were dancing to the music of two bands. The posted permit authorized 335 people on the premises. There was a kitchen, which while not ‘ ‘ fully equipped, ’ ’ did have a freezer, pizza oven and paper plates and was manned by a person whose duty it was to serve food such as frankfurters, hamburgers, pizza, candy and soft drinks. There were 12 or 14 tables and *176 picnic benches surrounding the dance floor. While no one was eating while the inspector was there he could not testify whether someone might have been eating an hour before or later. Admission was charged to patrons and was limited to persons under 21 years old. The People never challenged testimony by the defense that seven or eight people were employed in the service of food on the premises.
LAW
The question to be resolved is whether the described conditions failed to qualify the premises as a restaurant as described in section X-1.8 as a permitted use. Research reveals that the meaning of the term restaurant is elusive. The term was first used for an establishment in Paris about 1765. “ Restaurant ” was first applied to the dining rooms of the better-class hotels and to a few high-class a la carte restaurants. As establishments of different types came into being their character was fixed by such expressions as coffee houses, cafes, lunchrooms, daily lunchrooms, cafeterias, tearooms, waffle houses, fountain lunches, sandwich shops and many others, all included in the general use of the word “restaurant”. (See People ex rel. Canniano v. Kupas, 171 Misc. 480.)
In Matter of Bowers (33 F. Supp. 965, 966) a United States District Court in California stated: “ A ‘ restaurant ’ is a place where refreshments can be had to be consumed on the premises, from a near eating house and cook shop to any other place where tables are furnished. * * * [It] is an establishment for the sale of refreshments, both food and drink, or a place where meals are served, or an eating house. * * * A ‘ restaurant ’ [is] a place where refreshment or meals are provided to order.”
In Michigan, this definition was used: “ A ‘ Restaurant ’ has no more defined meaning, and is used indiscriminately for all places where refreshments can be had, from the mere eating-house or cookshop to the more common shops or stores, where the chief business is vending articles of consumption and confectionery, and the furnishing of eatables to be consumed on the premises is subordinate.” (Richards v. Washington Fire & Marine Ins. Co., 60 Mich. 420, 426.)
A Colorado court stated: A restaurant proprietor who “ permitted dancing incidentally to the serving of meals ” was not operating a “public dance” or conducting a “dance hall” within ordinance requiring license, in absence of inclusion of such entertainment in definition of terms in ordinance. (Cosmos v. City and County of Denver, 101 Col. 69, 72.)
*177 This statement was made in Illinois in People v. Deve (237 Ill. App. 65, 69): The premises intended to be used as a restaurant, having total area of 16,000 square feet, but in which dancing is to be permitted as “an incident to the restaurant business, the space to be used for dancing in the central portion of main floor being only 1,500 square feet, is not ‘ dance hall ’ within the meaning of clause (j) of section 448 of article III of chapter 17 of the Municipal Code of 1922 of the City of Chicago, and city authorities are not justified in refusing petitioner license solely on ground that the premises do not comply with the requirements for dance halls.”
Since the People contend that the premises were actually being used as a dance hall, this term was also researched. Black’s Law Dictionary (3d ed.) states: “ A ‘ dancehouse ’ or ‘ dance-hall ’ is a place maintained for promiscuous and public dancing, the rules for admission to which are not based upon personal selection or invitation. (State v. Loomis, 75 Mont. 88.) ”
The People have failed to prove beyond a reasonable doubt that the activities described did not constitute those normally found at a restaurant. In order for the People to prevail they would have to show that the non-restaurant activities extended to the degree that the character of the premises was changed. Certainly this would require more than the limited observations presented here.
The defendants are found not guilty.