Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas et al., Appellants,

v.

K F C OPERATING CO., Appellee.

No. 11750.

Court of Civil Appeals of Texas, Austin.

April 22, 1970.

Rehearing Denied May 20, 1970.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker Executive Asst. Atty. Gen., John R. Grace and Alan Minter, Asst. Attys. Gen., for appellants.

Clark, Thomas, Harris, Denius & Winters, Mary Joe Carroll, Barry Bishop, Austin, for appellee.

HUGHES, Justice.

This suit was brought by K F C Operating Co., a Tennessee Corporation, against Robert S. Calvert, Jesse James and Crawford Martin, Comptroller of Public Accounts, Treasurer and Attorney General, respectively, of the State of Texas, in their official capacities to recover fees paid under protest allegedly due under the so-called Chain Store Tax Act, ch. 17, Title 122A, Arts. 17.01–17.11, Taxation-General, Vol. 20A, V.T.C.S.[1]

All parties moved for summary judgment. The motion of K F C was granted; the motion of defendants was overruled. Judgment was accordingly rendered for K F C for the recovery of the fees paid under protest together with interest as provided by law.

The parties stipulated in the Trial Court to what appears to be the controlling facts;

1. All statutory references herein are to this Act unless otherwise stated.

however, reference is made in the briefs to the deposition of W. C. Schulle which was on file and considered by the Trial Court.

We quote from the stipulation:

"Pursuant to its authority to transact business in Texas, Plaintiff operated seventeen establishments within the State of Texas at the end of December, 1967, * * *

Plaintiff's establishments, which are known as 'Kentucky Fried Chicken,' sell cooked, prepared, ready-to-eat foods. The menu as described in Paragraph III of Plaintiff's Original Petition consists of fried chicken and such other prepared foods as potatoes, gravy, biscuits, cole slaw, baked beans, and potato salad. Cigarettes are available in coin-operated vending machines, but no merchandise or goods, except for prepared foods, are sold at any of Plaintiff's establishments. * *

Plaintiff is a member of the Texas Restaurant Association. Its establishments are listed as 'restaurants' in the Yellow Pages of the telephone directories of the various towns in which Plaintiff does business. Plaintiff is a member of the National Restaurant Association, and its establishments are classified by the National Restaurant Association as 'carry-out restaurants.'

Plaintiff's establishments serve their prepared food in containers to customers who make their selections from Plaintiff's menu at a counter. The food thus sold can be either consumed on the premises or taken away from the establishment for consumption elsewhere. Plaintiff's method of counter service is such that Plaintiff does not know, and cannot determine, whether a majority of its customers chose to consume their food on the premises or take it elsewhere. Plaintiff stipulates, however, for the purpose of this lawsuit, that (a) 51% or more of the food sold by Plaintiff during the period in controversy was sold for off-premises consumption, (b) that the greater percentage of customers of the seventeen locations in question consumed their food away from Plaintiff's premises and (c) that 51% or more of the food sold by Plaintiff during the period in controversy was consumed away from Plaintiff's premises.

The Defendant Comptroller of Public Accounts of the State of Texas has adopted and followed the administrative interpretation and position that an establishment is not a 'restaurant, sandwich shop and other eating place' where 51% or more of its food is sold for off-premises consumption.

The only issue between the parties is whether or not Plaintiff's establishments are 'restaurants, sandwich shops and other eating places' within the meaning of the Texas Store Tax Statute, Article 17.05, Title 122A, Taxation-General, Vernon's Annotated Civil Statutes of Texas."

Sec. (b) of Art. 17.02 makes it the duty of the Comptroller to collect and supervise the collection of the fees provided for in ch. 17 and gives him authority to promulgate rules and regulations to provide for the collection of such fees.

Art. 17.07 defines "store" as follows:

"The term 'store' as used in this Chapter shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Chapter which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail or wholesale."

Art. 17.05 which in paragraph (b) prescribes the fees to be paid and which are progressively larger as the number of chain stores increases provided in paragraph (a) the exemption with which we are here

directly concerned. Because of the conclusions we have reached, presently to be stated, we copy in full that portion (actually one sentence) of Art. 17.05 which contains the specific exclusion relied upon by appellee as well as other exclusions:

"Provided that the term 'store, stores, mercantile establishment, and mercantile establishments,' whenever used in this Chapter shall not include: any place or places where or from which nothing is sold except ice; any wholesale and/or retail lumber and/or building material place of business, provided as much as seventy-five per cent (75%) of the gross proceeds of the business done each preceding calendar year at such place of business is derived from the sale of lumber and/or building material, provided that the term 'building material' as used herein shall be construed to include any material which is used or usable in the construction of buildings, improvements or structures, including materials consumed in and any article to be built into and become a part of buildings, improvements or structures; also mechanics hand tools used in the construction of buildings, improvements, or structures; and/or oil and gas well suppliers and equipment dealers, and any place of business commonly known as a gasoline filling station, service station, or gasoline bulk station or plant, provided as much as seventy-five percent (75%) of the gross proceeds of the business done thereat is derived from the selling, storing, or distributing of petroleum products; or business now paying an occupation tax measured by gross receipts except as otherwise specified in this Chapter; or any place or places of business used as bona fide wholesale or retail distributing points by manufacturing concerns for distribution of products of their own manufacture only; or any place or places of business used by manufacturers, manufacturers' representatives, wholesalers or jobbers, solely as showrooms or display rooms for exhibiting merchandise and from which locations no deliveries or retail sales are made; or any place or places of business used by bona fide processors of dairy products for exclusive sale at retail of such products; or any grower, producer, itinerant retailer or wholesaler of agricultural food products who sells such produce in any stall or space rented or leased on a daily basis in a municipally owned or operated produce market; or any place or places of business commonly known as religious bookstores operated for the purpose of selling religious publications of any nature including Bibles, Song Books, Books on Religious Subjects, Church Offering Envelopes, Church, Sunday School, and Training Union Supplies or any place or places of business operated by non-profit religious and charitable institutions and organizations; *or any restaurants, sandwich shops and other eating places*; or any business operating for the purpose of parking automobiles, parking lots, garages; or any radio station; provided that gas and/or electric utilities shall not hereafter be required to pay any license fee under this Chapter for the privilege of operating in towns of three thousand (3,000) population or less according to the next preceding Federal Census, a store or stores for the purpose of selling gas and/or electrical appliances and/or parts for the repair thereof, provided as much as seventy-five per cent (75%) of the total gross receipts in the preceding calendar year in each such town where such a store or stores are located is derived from the sale therein of gas and/or electric service, and provided further, that for the privilege of operating a store or stores in the towns of more than three thousand (3,000) population, according to the next preceding Federal Census for the purpose of selling any or all of the above-named commodities, gas and/or electrical utilities shall pay only the fees imposed by Articles 17.02, 17.04, 17.05 of this Chapter." (Italics added)

Art. 17.05(c) provides, in part, "All those establishments, (except certain ones named but not including restaurants, sandwich shops and other eating places) exempted from the above schedule (of fees) shall" pay an exemption fee, one to nine dollars per store.

In 1938 the Chain Store Tax Law [2] did not specifically exclude restaurants, sandwich shops and other eating places from coverage and the *Comptroller* asked the then Attorney General whether such places were "stores" within the meaning of the Act, the word "store" being defined then as now. *The Attorney General answered "no"* and in the course of his opinion stated:

"The decisions are uniform, both in Texas and in other States and in the Supreme Court of the United States that a restaurant or catering establishment is not a mercantile establishment nor is it a place where the business of selling goods, wares and merchandise is carried on. * * *

Under the cases referred to we think it clear the term mercantile establishment does not include a restaurant or a place where prepared food is sold to be consumed on the premises. Neither do we think that a restaurant or sandwich stand may be considered as a place engaged in the business of selling goods, wares and merchandise as those terms are commonly understood."

Thirteen years later and sixteen years after the Chain Store Tax Act was enacted, the Legislature amended the Act and specifically exempted "restaurants, sandwich shops and other eating places." [3]

Based on this historical background, the *Comptroller* has adopted the 51% rule as shown by the testimony of Mr. W. C. Schulle, Assistant Director of the Store and Excise Tax Division of the Comptroller's office:

"Q    That letter is Exhibit A in the petition. All right. In that letter, your office states that these stores, referring to the seventeen Kentucky Fried Chicken outlets in the Dallas area, qualify as regular chain stores, since fifty-one per cent or more of that food is sold to go. Is this the position which your office still takes?

A    Yes.

Q    In other words, an operation, such as the Kentucky Fried Chicken stores, would be a restaurant if only forty-nine per cent of its food was sold *to go*, but *ceases to be a restaurant* when fifty per cent or more of its food is sold to go, is that correct?

A    Right.

Q    What was your basis for making this determination?

A    The base upon which we have made this determination will be found in the attorney general's opinion dated April 9th, 1939, written by William M. Brown, Assistant Attorney General. * * *

From an administrative standpoint, we must arrive at some figure for the general public to understand that this is the manner in which the law will be enforced. From the opinion that we have here, it was determined that we would say fifty-one per cent of the sale of prepared food, that was prepared on the premises, and consumed on the premises was a restaurant and not taxable."

The holding of the Attorney General, clearly correct, was that the sale of food, cooked or prepared for immediate consumption, was not the selling of goods,

2.  Acts 44th Leg., 1st Called Sess., ch. 400, p. 1589 (1935).

3.  Acts 1951, 52nd Leg., p. 714, ch. 402.

wares and merchandise as those words are commonly understood.

We do not believe that the Attorney General in saying that, "* * * we think it clear the term mercantile establishment does not include a restaurant or a place where prepared food is sold to be consumed on the premises, * * *" was attempting to define a restaurant. In fact, he cited a case, Debenham v. Short, 199 S.W. 1147, Tex.Civ.App., Texarkana, no writ (1917), where "restaurant" was defined to mean a place where a person who properly conducts himself and is able and willing to pay "has a right to demand that food be furnished him * * *." Nothing was said about consuming the food on the premises.

Conceding, however, that in order to be a "restaurant" or "eating place" food must be consumed on the premises, the question remains as to how much of the food sold must be consumed on the premises in order to constitute a "restaurant" or "eating place." Certainly, there is nothing in the opinion of the Attorney General to support the 51% rule. We believe that had the Legislature intended that all of the prepared food sold at an eating place must be consumed on the premises or that a certain percentile of such food must be so consumed in order to come within the exclusion of the statute, it would have said so in plain and clear language. We now direct attention to the exclusionary portion of the statute copied above.

Exempted are places where nothing is sold except ice; any wholesale or retail lumber or building material place of business, provided that as much as 75% of the previous year's business is derived from the sale of lumber and building materials, the latter being defined;[4] a similar 75% provision is made regarding gasoline filling stations, service stations and gasoline bulk station or plant; any place of business used by bona fide processors of dairy products for exclusive sale at re-

tail of such products. There are other exemptions but the ones listed illustrate the point that the Legislature was cognizant of the method of classifying businesses for taxation according to whether the business was exclusively engaged in the sale of a product or the percentile of sales of named products in order to be exempt.

█  The only conclusion we can draw from the foregoing is that had the Legislature intended the law to be that 51% of sales of prepared foods for human consumption must be consumed on the premises where sold in order for such business to be tax exempt, it would have so provided.

Appellants cite Newman v. Piggie Park Enterprises, Inc., 256 F.Supp. 941 (D.S.C. 1966), reversed, 377 F.2d 433 (4th Cir. 1967), modified as to attorney's fees and affirmed, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263.

Appellants quote from the District Court opinion, but since this opinion was reversed we will quote from the opinion of the Circuit Court. That suit involved the scope of the Civil Rights Act which covered "any restaurant, cafeteria, lunch room, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises." The District Court held that this Act would not apply to a drive-in eating place unless a majority of the prepared food sold was actually consumed by the customers on the premises. The Court found that 50% of the food was consumed on the premises and 50% off the premises.

In reversing the District Court, the Circuit Court stated:

"Such a construction, we think, finds no support in congressional history. The Congress did not intend coverage of the Act to depend upon a head count of how many people eat on the premises or a computation of poundage or volume of

4. Under a prior law this exclusion required "exclusive" engagement in such

business. Acts 1935, 44th Leg., 1st Called Sess., ch. 400, p. 1589.

food eaten. If it had so intended, it would have been a simple matter to change the questioned phrase 'for consumption on the premises' to read 'actually consumed on the premises.' * * *

In our view, the emphasis in the phrase 'principally engaged in selling food for consumption on the premises' is properly on the word 'food'. * * *

The words in the statute 'for consumption on the premises' modify the prior word 'food' and describe the kind of food sold by other facilities that are covered similar to restaurants, cafeterias, lunchrooms, lunch counters, and soda fountains. The Congress clearly meant to extend its power beyond the ordinary sit-down restaurant and just as clearly did not undertake to legislate with respect to grocery type food stores which would have been covered but for the modifying phrase 'for consumption on the premises.' Thus, food stores are not covered, but stores (or facilities) that sell food of a particular type, i. e., ready for consumption on the premises, are covered. What the customers actually do with the ready-to-eat food was not the concern of the Congress—whether they eat it then or there or subsequently and elsewhere."

We believe this case strongly supports the position we take that had the Legislature meant that in order to be a restaurant a majority of the prepared food sold be consumed on the premises, it would have so stated. We are also of the view that this case is high authority for us to hold that if food prepared for immediate consumption is sold it is immaterial in determining whether the place selling it is a restaurant or eating place that such food is or is not consumed on the premises. Our statute, in this respect, is much more subject to this construction than was the Civil Rights Act.

Appellants cite Mann v. Rugel, 228 S.W. 2d 585, Tex.Civ.App., Dallas, no writ (1950) for the statement that, "If you give the term 'barbecue stand' the meaning of a 'restaurant' where food is consumed at the premises, such place would not be a 'retail store.' * * *"

Appellants also cite and quote from Errington v. Birt, 105 L.T.N.S. 373 (England 1911). There the question was whether, under the circumstances, a lease providing for the use of the premises for a "restaurant" was being violated. The Court said:

"I think the premises are being used otherwise than as a restaurant within the meaning of clause 4. It is said to be a fish restaurant. There may be such a restaurant, just as there are vegetarian restaurants, but having regard to the admission that more than half the business consists in the sale of fried fish taken away to be consumed off the premises, I do not think this is being used as a restaurant in the ordinary meaning of the word, and the printed bill and other evidence suggests that the fried fish business was being cloaked under that of an ordinary restaurant."

Appellant also cites City of Flordell Hills v. Hardekopf, 271 S.W.2d 256, St. Louis Court of Appeals, Mo. In this case the Court held that a place selling prepared food to be eaten on the premises as well as ice cream and beverages to be eaten off the premises was not exclusively engaged in the restaurant business so as to be exempt from a license tax required by order and to be exacted from one dealing in selling of any "goods, wares, or merchandise." This case stated, "A restaurant, according to common understanding, is a public eating place where, as the chief incident to the business carried on, food and drink are prepared and served to be consumed on the premises."

It is to be noted that here, as stipulated, the food sold by appellee could "be either consumed on the premises or taken away * * * for consumption elsewhere."

On the other hand, appellee has cited the following cases to support its position that it is operating a restaurant or other eating place; People on Complaint of Canniano v. Kupas, 171 Misc. 480, 13 N.Y.S. 2d 488 (1939); City of Fort Smith v. Gunter, 106 Ark. 371, 154 S.W. 181 (1913); State ex rel Spiccia v. Abate, 6 Ohio App. 2d 233, 217 N.E.2d 709 (1964), affirmed, 2 Ohio St.2d 129, 207 N.E.2d 234 (1965); Manesis v. Sulunias, 150 Ga. 315, 103 S.E. 459 (1920). We will not review the holdings in these cases although they are persuasive in the view that consumption of prepared food on the premises is not an indispensable feature of a restaurant.

Nothing has transpired legislatively relevant since 1938 when the Attorney General ruled that restaurants, sandwich shops and other eating places were not taxable under the Chain Store Tax primarily, as we construe his opinion, for the reason that such establishments were not engaged in the business of selling goods, wares and merchandise except the 1951 amendment, supra, expressly naming restaurants, sandwich shops and other eating places as not being included in the term "store, stores, mercantile establishment, mercantile establishments" as used in the Act, the definition of "store" as contained in Art. 17.07, supra, remaining unchanged from its original enactment in 1935.

If the sale of prepared food was not the sale of goods, wares and merchandise in 1938, we know of no reason to hold that it is today.

We believe that it would be ironic and a flagrant disregard of legislative intention to hold that the tax exempt status under the Chain Store Tax of restaurants, sandwich shops and other eating places when they were not specifically named therein as being exempt was reversed by the 1951 amendment specifically naming them as being exempt.

It is our opinion that the clear and obvious intent of the Legislature by the 1951 amendment was to put into statutory language the purport of the 1938 Attorney General's opinion declaring the tax exempt status of restaurants, sandwich shops and other eating places under the Chain Store Tax. So believing, the judgment of the Trial Court is affirmed.

Affirmed.