OPINION OF THE COURT
David B. Saxe, J.
The issue that I must decide is whether the statutory limitation on liability in subdivision 1 of section 201 of the General Business Law provides a monetary haven for a discotheque.
The section states in part: “(A)s to property deposited by guests or patrons in the parcel or check room of any hotel, motel or restaurant, the delivery of which is evidenced by a *404 check or receipt therefor and for which no fee or charge is exacted, the proprietor shall not be liable beyond seventy-five dollars, unless such value in excess of seventy-five dollars shall be stated upon delivery and a written receipt, stating such value, shall be issued, but he shall in no event be liable beyond one hundred dollars, unless such loss occurs through his fault or negligence.” (Emphasis supplied.)
On January 23,1982, the claimant, his wife and a group of friends convened for a party at Studio 54 (Studio) in Manhattan. Studio, licensed by the New York City Department of Consumer Affairs as a cabaret, is a discotheque, where patrons dance to recorded music usually played continuously on high fidelity equipment. (Random House Dictionary of the English Language [unabridged ed, 1973].) Often a psychedelic light show accompanies the music and provides background and impetus for the free-spirited patrons who pay $18 per person to dance to the deafening and often overwhelming disco music played continuously on the sophisticated sound system. A cabaret is defined as “Any room, place or space in the city in which any musical entertainment, singing, dancing or other form of amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink”. (Administrative Code of City of New York, § B32-296.0, subd 3.)
No food is sold or served here — not even a single peanut or pretzel to accompany the alcoholic and soft drinks available for purchase.
The Conboy party checked their coats, 14 in all, with the coatroom attendant. They received seven check stubs after paying the 75 cent charge per coat. A bailment of the coats was created. (See, generally, 9 NY Jur 2d, Bailments and Chattel Leases, § 1.) Mr. Conboy did not issue a statement concerning the coat’s value to the attendant.
After their evening of revelry, they attempted to reclaim their coats. Mr. Conboy’s one-month-old, $1,350 leather coat was missing. It has not been found and, accordingly, he has sued Studio for $1,350.
Under traditional bailment law, once the goods were delivered, the failure of the bailee (Studio) to return them *405 on demand, created a prima facie case of negligence. The burden of coming forward with evidence tending to show due care shifted to Studio. (Claflin v Meyer, 75 NY 260, 264; Singer Co. v Stott & Davis Motor Express, 79 AD2d 227.) Studio did not come forward with any evidence to meet this burden. Mr. Conboy is entitled to a judgment.
Studio, relying on subdivision 1 of section 201 of the General Business Law, contends that its liability is limited to $75 since no value was declared for the coat. Its argument is incorrect for two reasons.
First, the statute applies to a hotel, motel or restaurant and then only to property deposited by a patron in a checkroom “the delivery of which is evidenced by a check or receipt therefor and for which no fee * * * is exacted”. The statute offers innkeepers and restaurant proprietors who comply with it a reduction of the innkeeper’s common-law insurer liability as to guests’ property deposited with them. (See, generally, Navagh, A New Look at the Liability of Inn Keepers for Guest Property Under New York Law, 25 Fordham L Rev, 62; Steiner v O'Leary, 186 Misc 236, affd 186 Misc 577.) Compliance with the terms of the statute relieves the innkeeper or restaurant owner of this common-law responsibility, where applicable. ('Weinberg v D-M Rest. Corp., 53 NY2d 499; Zaldin v Concord Hotel, 65 AD2d 670, mod on other grounds .48 NY2d 107.) The statute is in derogation of the common law and is therefore strictly construed. (Briggs v Todd, 28 Misc 208 [App Term, 1st Dept].)
That, being said, it need only be noted that the statute offers its protection to restaurants, hotels and motels, not discotheques which appear to be modern-day versions of dance halls. (Cf. Administrative Code, § B32-296.0, subd 1.)
Simply put, a discotheque may qualify as a restaurant but there is no logic in giving it that classification unless one of its principal activities is the furnishing of meals. Certainly, Studio should not be classified as a restaurant, because it serves no food. A licensed cabaret, such as Studio, is permitted to engage in the restaurant business (Administrative Code, § B32-296.0, subd 3) but is not required to.
*406 The term “restaurant” was first used in America to refer to dining rooms found in the best hotels and to certain high-class a la carte restaurants. (People v Kupas, 171 Misc 480.) Today, a restaurant would be thought of as an establishment that sells food and drink or where meals may be purchased and eaten. (People v Gobeo, 6 NYS2d 937; see, also, Donahue v Conant, 102 Vt 108.) The limitations on liability set forth in the statute are therefore not applicable here. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240.) It may be illogical to condition limitation of liability on the sale of meals, but that is what the statute says and it is for the Legislature to change, not this court.
Even if I might have concluded that Studio could be treated as a restaurant, it still would not have benefited from the liability limitation provided by the statute because of the fact that a charge was exacted for each coat checked. (Aldrich v Waldorf Astoria Hotel, 74 Misc 2d 413.)
Studio claims however that their liability may nevertheless be limited by the posting of a sign in the coatroom. The sign states: “Liability for lost property in this coat/check room is limited to $100 per loss of misplaced article. This notice is posted pursuant to Section 201, General Business Law of New York State.”
My holding to the effect that subdivision 1 of section 201 of the General Business Law is not applicable here, does not make the posting of the sign a useless act, for it may still function as a common-law disclaimer. To bind Conboy to this limitation, I must find however that he had notice of the terms of the disclaimer and agreed to it. (Klar v H. & M. Parcel Room, 270 App Div 538, 541, affd 296 NY 1044.) Studio did not establish that the sign was posted in a conspicuous manner. (Klar v H. & M. Parcel Room, supra, at p 542; Aldrich v Waldorf Astoria Hotel, supra.)
I hold that Conboy is not bound by the posted disclaimer of liability.
As to damages, Conboy is entitled to the “real value” of the coat. (Alebrande v New York City Housing Auth., 44 Misc 2d 803, revd on other grounds 49 Misc 2d 880 [App Term, 1st Dept].) Real value, especially with respect to used clothing or household furnishings that are lost or damaged is not necessarily its market value which pre *407 sumably would reflect a deduction for depreciation. (Supra, at p 808; Teich v Andersen & Co., 24 AD2d 749.) In fact, the real value may be measured by the price paid when new for the lost or damaged goods. (Lobell v Paleg, 154 NYS2d 709, 713.)
One commentator has offered a reason that the strict market value approach is not favored: “No judge buys his clothing second hand and none would expect any owner to replace his clothing in a second hand store. Hence no judge expects to limit the cost of replacing clothing to a market no one should be expected to use.” (Dobbs, Remedies, § 5.12, p 397.)
I therefore hold that Conboy may be compensated on a basis that will permit him to replace the very same coat purchased new — $1,350.
Judgment for claimant in the sum of $1,350.