PURNELL v. DUGUE

(June 2, 1930. Opinion and Decree.)
(July 1, 1930. Rehearing Refused.)
(August 7, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Sanders, Baldwin, Viosca & Haspel, of New Orleans, and Edward Dubuisson, of Opelousas, attorneys for plaintiff, appellee.

Woodville & Woodville, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Plaintiff, owner of an apartment which was rented to and occupied by defendant, seeks to recover on twelve rent notes, each for the sum of $70.

Defendant had occupied the apartment for two years, under a written lease for the term of three years, when, during the early days of October, shortly after the commencement of the third year, he abandoned the premises.

He admits that he signed the notes and executed the lease, but refuses to pay them, and bases his refusal on the assertion that the heating system with which the apartment was provided was inadequate and that it was impossible, during the winter months, to raise the temperature sufficiently high to make the premises habitable.

Plaintiff denies 'that the heating system was inadequate and also denies that she, as the owner of the apartment, was under any obligation to provide a heating apparatus of any particular size or type and contends that, as the heating system, such as it was, was in proper working order, her duty as landlord was fully complied with, and that she did not guarantee, and that, as a matter of law, an owner is not called upon to guarantee, that an apartment can be heated to any particular temperature.

It thus appears that two questions are presented:

One of fact, viz., Was the heating apparatus adequate and capable of heating the apartment to a reasonable temperature? And the other of law, viz., Is it the duty of a landlord who rents an apartment containing a heating system to see to it that the system will maintain a reasonable temperature?

The question of fact is the more easily disposed of, so we will consider that first.

The testimony of Mrs. Dugue, defendant's wife, and of defendant himself, of their servant and of a gentleman who was a frequent visitor in the apartment and who later married defendant's niece, is to the effect that, during the two winters the apartment was occupied, they were never able to maintain on cold days a reasonable temperature. A physician who treated

Mrs. Dugue states that he, on one occasion when he called upon her professionally, found the rooms very cold and that he kept his overcoat on.

Various heating experts who examined the heaters testified that they were entirely inadequate and could not furnish sufficient heat for rooms so large as those composing the apartment and the figures given by one of these experts with reference to the cubic capacity of the rooms and the heating capacity of the heaters show that in order to heat the place in accordance with what is recognized in this climate as proper practice there would have been required heaters either almost double in size, or practically double in number.

Against this evidence we find but little testimony and that of a rather negative character.

Mrs. Poitevent, who occupied the premises after Mr. and Mrs. Dugue left, states that the heaters were sufficient for her needs, except that sometimes she had to employ oil heaters to supplement the regularly installed heating system. Mrs. Dugue, defendant's wife, stated that she on several occasions had tried the use of oil heaters, but that she was subject to headaches and that the effect of the oil heater increased her headaches to such an extent that she had to discontinue their use.

Other persons occupying various other apartments in the same building state that their respective heating systems are and were adequate, but the fact is that only one of the other apartments was at all similar in size and arrangement to that involved here, and the tenant of that one demanded and received at least one additional heater.

We are thoroughly convinced from the evidence that the apartment could not be even reasonably comfortably heated because of the inadequate heating system, and that the defendant and his wife were most uncomfortable during the winters they occupied the place.

We now approach the question of law to which we have referred. Plaintiff maintains that a tenant who has the opportunity of seeing and examining the type of heaters or radiators contained in an apartment cannot complain if those heaters or radiators, when working properly and to their full capacity, are not able to heat the leased premises to a comfortable temperature; in other words, that a landlord does not warrant that his premises can be heated to any particular temperature, even to a reasonable temperature, but merely that such heaters as he furnished have no mechanical defects and will operate. We are told of the far-reaching effects· which will attend a holding that a landlord warrants the efficiency of his heating system and that, if we so hold, all leases of houses containing only old-fashioned open grates may be immediately broken. We do not believe that any such dire result will follow a decision that a landlord, who furnishes a modern apartment without open fires, but containing what seems to be a modern heating system, warrants to his tenant that that system is of sufficient size and efficiency to maintain a reasonably comfortable temperature.

In Scudder v. Marsh, 224 Ill. App. 355, we find a case involving facts strikingly similar to those presented here. The property leased was a two-story dwelling.

A heating system was contained in the dwelling but, as the court found:

"In November, when the weather became cold, the furnace failed to heat the dwelling although it was run properly with a good fire; the average temperature in the

rooms was from 48 to 56 degrees. Defendant's children became ill and a physician found the room so cold that his breath congealed in every room. He examined the furnace and describes it as in full blast; an experienced man in heating plants examined the furnace at this time and testified that it was only 60 per cent adequate to furnish sufficient heat for the building."

The court said:

"The insufficiency of the furnace cannot be determined by merely looking at it, especially by one not expert in the matter of furnaces, and its inadequacy in heating capacity can only be determined by an investigation by an expert and by an actual experience with it in cold weather. Do such circumstances amount to a constructive eviction by the landlord justifying the removal from the premises of the tenant and his discharge from any obligation to pay rent thereafter?

"Plaintiff invokes the general rule of caveat emptor which throws upon the lessee the responsibility of examining as to the existence of defects and providing against their consequences. Experience, however, has shown that under circumstances like these under consideration, the strict application of this rule tends to work an injustice upon the tenant. From the very nature of the case, it would be almost impossible for a tenant by merely looking at a furnace in the summer time to have any informed judgment or opinion as to its heating sufficiency."

We have quoted somewhat at length from the opinion in the above case because of its remarkable similarity both of fact and in legal principle.

In the case of the building containing only open grates, the tenant sees and knows just what he is leasing and it cannot be said that he is given any warranty as to the efficiency of open grates. But such is not the case where the lease covers a modern apartment containing a heating system, the efficiency of which the ordinary layman can tell nothing about except after actual use. In such case it is only rea-sonable in the tenant to suppose that that system will not only operate, but will operate efficiently.

The various cases in which we and other courts have held that the abrogation of written leases is not favored meet with our entire approval, but in all such cases it was held that, where an abrogation is justified by the facts and the law, it should not be denied.

Here we think both the law and the facts warrant us in holding that defendant was within his rights in abandoning the premises.

Plaintiff complains that, as the written lease makes no mention of a heating system, to allow evidence to be introduced showing that the system was insufficient, is to permit the varying of a written contract by parol. We do not think so. All modern apartments contain heating systems and it is contemplated in any such lease, whether actually written into it or not, that, where an apartment contains a heating system, as a matter of fact that system is included in the lease and the reasonable adequacy of that system is warranted. That even plaintiff interpreted her lease as including a heating system is evidenced by her many promises that she would remedy the defect by the installation of additional heaters.

It was held in Bliss v. Clark, 104 Misc. Rep. 543, 172 N. Y. S. 112, that even in the absence of a covenant to furnish heat if "the means of furnishing the heat are in the control of the landlord, the lessee of a living apartment may, for failure of landlord to furnish proper heat, abandon the premises. * * *"

The court in discussing such covenants as are impliedly contained in certain leases,

even though not expressly set forth therein, said:

"An entirely different situation, however, arises where, as in the case at bar, there is a lease of the premises with no covenant on the part of the landlord to furnish heat, although the means of furnishing heat are within the control of the landlord. In such a case there is an implication created by the court that a failure to supply heat furnished sufficient reason for an abandonment of the premises by the tenant and a refusal to pay rent. Berlinger v. MacDonald, 149 App. Div. 6, 133 N. Y. S. 522; Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716. Originally the courts created an implication that in a lease there is implied a covenant for quiet enjoyment. Noke's case, 4 Coke R. 80b; Andrews' case of Gray's Inn, Croke, Eliz. 214, 674. Whatever may have given rise originally to the implication of this covenant by the court, the doctrine is now too well established to be doubted, either in this country or in England. Brady v. Cartwright, 22 L. J. Ex. 285; Budd-Scott v. Daniel, 2 K. B. 351; Mack v. Patchin, 42 N. Y. 171, 1 Am. Rep. 506. The implied covenant to supply heat is a part of the covenant of quiet enjoyment, and thus an implied covenant for quiet enjoyment has given rise to this implied covenant to furnish heat."

We think that the reasoning above set forth is sound and is applicable here and that, as we have stated, where a leased dwelling contains a supposedly modern heating system, there is implied a warranty, even if it be not expressed, that that system is reasonably adequate.

Plaintiff also contends that the installation of additional heaters would have cost only about $35 or $40 and that therefore defendant should have installed them himself and would have been entitled to deduct the cost thereof from the rent due or to become due. Civ. Code, art. 2694. We do not think that either the right or the duty of a tenant requires that he go so far as to tamper with the piping and fundamental structure of his landlord's building; his right is limited to the making of repairs and, in our judgment, does not include the right to remedy defects which were in the building when he first went into possession of it.

If the repairs became necessary without fault on the part of the landlord and did not result from an original defect, possibly the tenant should make them under the article of the Code referred to, but here the defect is an original one and is due to the owner's neglect. In Denman v. Lopez, 12 La. Ann. 824, the Supreme Court said:

"In the case at bar there was no original or latent defect in the building."

In Caffin v. Redon, 6 La. Ann. 487, the controversy was decided in favor of the lessee because of an original defect in the construction of the building, and it was held that the lessee had the right to demand the dissolution of the lease.

The fact that the installation of additional heaters was not so simple a matter as is now suggested is evidenced by the fact that, though plaintiff undoubtedly promised on many occasions to add the additional heaters necessary, she failed to do so, apparently considering it a matter more costly than she cared to undertake.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of defendant and against plaintiff, dismissing this suit at her cost.