202 So.2d 451 (1967)
Leona STOLTZ
v.
Joseph M. McCONNELL.
No. 2869.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1967.
Rehearing Denied October 4, 1967.
Writ Refused November 10, 1967.
*452 Adrian G. Duplantier, Charles J. Rivet, New Orleans, for plaintiff-appellee.
D. A. McGovern, III, New Orleans, for defendant-appellant.
Before McBRIDE, YARRUT and SAMUEL, JJ.
McBRIDE, Judge.
This is a summary proceeding by which the landlord seeks to have her tenant evicted from the premises XXX-XX-XX Bourbon Street for certain alleged violations of the written lease. After a trial of the rule to show cause a judgment of eviction was rendered in accordance with plaintiff's prayer. Defendant-appellant applied for, was granted, and perfected a suspensive appeal to this court.

On Motion to Dismiss Appeal
Appellee moves to dismiss the suspensive appeal alleging that defendant failed to comply with the provisions of C.C.P. art. 4735 which stipulates in part that:
"An appeal does not suspend execution of a judgment of eviction unless the defendant has answered the rule under oath, pleading an affirmative defense entitling him to retain possession of the premises * * *"
*453 Appellee makes the contention that as defendant has not answered the rule under oath he is not entitled to a suspensive appeal.
The record discloses that two days prior to the return date of the rule to show cause defendant filed an unverified answer setting forth certain affirmative defenses. The day before the return date he filed in the record an affidavit in which he swore to the truthfulness of "* * * each and every one of the twenty allegations contained in said answer." Appellee's position is that the affidavit having been filed subsequent to the unsworn answer there is no answer under oath as required by the above mentioned codal article. Counsel argue that the affidavit does not constitute an amendment to the answer because it was not served on plaintiff as required by C.C.P. art. 1312 and thus it is ineffectual.
We think appellee's ground for dismissal is hypertechnical. Appeals are greatly favored under our law and should be dismissed not on harmless technicalities but only for substantial causes. Unless the ground urged for its dismissal is free from doubt the court sustains the appeal. General Motors Accept. Corp. v. Deep South Pest Con., 247 La. 625, 173 So.2d 190; Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594; Wischer v. Madison Realty Company, 242 La. 334, 136 So.2d 62.
Both the answer and the verifying affidavit were filed in the record prior to the trial of the rule and when the matter was taken up there was in the record, to all intents and purposes, an answer "under oath" and counsel for plaintiff surely was cognizant thereof. If the court were to treat the affidavit as an amendment to the answer requiring service on plaintiff under the terms of C.C.P. art. 1312, then there was a complete waiver of the necessity of service by plaintiff having proceeded to trial on the rule. If counsel had any complaint to make regarding non-service, he should have made his objection known to the trial judge when the rule was called. Even then the only sanction which could have been imposed would be a refusal by the trial court to proceed. See official note (c) under said article. Moreover, it seems to be the policy of our law to allow the verification to be supplied. Clark v. Illinois Cent. R. Co., 134 La. 440, 64 So. 281. Plaintiff was not prejudiced at the trial below by the manner in which the verification of the answer was accomplished. The motion to dismiss is denied.

On the Merits
The ground floor of the premises XXX-XX-XX Bourbon Street is intended for business purposes; the second floor and rear buildings are used as living quarters. Defendant has been the lessee of the entire premises for more than 17 years. The current lease is dated March 26, 1960 and runs for a period of seven years starting December 1, 1960 and ending on November 30, 1967, in consideration of a substantial monthly rental, Mrs. Marie D. Van Roy appearing as lessor. The lease stipulates: "The premises herein leased are to be used for the following purposes:Restaurant on ground floor; living quarters for second floor and rear building." Before the confection of the current lease, defendant, as lessee, occupied the premises under a prior lease, the terms of which are not shown by the record. However, it appears that about ten years ago and during the existence of the initial lease defendant subleased one-half of the front lower floor to a corporation denominated "Embers Steak House" (the corporate stock of which is owned by defendant and his two nephews) for the operation of a restaurant therein.
Defendant has always operated a hamburger shop on the lower floor of the premises and from a photograph in the record we notice that in connection with said business activity there is presently a counter over which patrons are served and stools along the counter on which they may be seated. Judging from certain utensils the picture shows located on and to the rear *454 of the counter, defendant serves other comestibles in addition to hamburger sandwiches to his patrons. Defendant, at the present time, in addition to his hamburger business, is engaged in selling "corn dogs" and "corn on the cob" to the public. Some sales of the corn products are made to customers on the sidewalk but, of course, that fact is of no moment, for at any rate defendant is operating a restaurant on the ground floor in accordance with the terms of the current lease.
Webster's New International Dictionary, Second Edition, defines the word "restaurant" as: "An establishment where refreshments or meals may be procured by the public; a public eating house."
In People, on Complaint of Canniano v. Kupas, 171 Misc. 480, 13 N.Y.S.2d 488, 490, it was held that a motor vehicle where frankfurters and coffee are prepared on a grill is a restaurant.
In State v. Shoaf, 179 N.C. 744, 102 S.E. 705, 9 A.L.R. 426, the court found that a place where wieners and sandwiches are sold, guests seating themselves on stools near a counter, there being no tables, was a "restaurant"; a "restaurant" was defined as a place where refreshments, food and drink are served to be consumed on the premises.
When the current lease was entered into, half of the lower floor was still occupied by Embers Steak House (as sublessee) which operated a restaurant, and the other half was occupied by defendant wherein he conducted his hamburger business. The living quarters on the second floor were occupied by plaintiff, who was the defendant's sublessee thereof. She said she had lived there "for years." Plaintiff purchased the property from Mrs. Van Roy, the lessor, on January 10, 1964 and, of course, from the moment of her acquisition plaintiff became the landlord of her vendor's tenant and the defendant became her tenant. Notwithstanding she became the owner of the building, plaintiff occupied the second floor thereof as the sublessee of defendant. She remained in the premises as defendant's subtenant for some time after her purchase and then moved out of the property for about a month or so but later returned and again became the subtenant of defendant under a written lease, the term of which will not expire until defendant's lease terminates. The fact that plaintiff lived in the premises is of no special significance except that it points up that she knew or should have known what was going on.
Some time during May, 1967, Embers Steak House made arrangements to move its business to another location and placed a sign in the window reading: "We are closing May 29th and will re-open in two weeks at 700 Bourbon St."
By reason of the fact that the premises at the new location were not ready for occupancy, Embers Steak House made no move. All of its equipment and effects are still located at XXX-XX-XX Bourbon Street. However, all air conditioning units have been removed from the windows, the partition (of a temporary nature and not attached to the building) which separated the Embers restaurant from defendant's hamburger shop has been dismantled. Certain wiring, which was hung by strings in the restaurant to feed electrical energy to the air conditioning units, etc., was taken down. In other words, the effects and equipment of Embers Steak House have been placed in readiness for removal from the building when the new location is ready for occupancy. One of the items of equipment is a large chandelier in the shape of a wheel owned by Embers Steak House. This chandelier has been detached from the ceiling and now rests upon the floor.
On June 8, 1967, the attorney for plaintiff dispatched (certified mail) to defendant a letter to the effect that defendant's lease was cancelled and he was ordered to surrender possession of the premises not later than June 20, 1967. The grounds *455 stated in the letter for cancellation of the lease and for possession are:
"More especially, but not exclusively, you have failed to maintain the premises in the same good order as received; you have caused, or permitted, unsightly signs to be placed on the premises without the written consent of Lessor; you have abandoned a part of the premises and discontinued the use of the premises for the purposes for which they were rented; you have begun the removal of personal property and goods to the prejudice of the Lessor's lien; and in other respects best known to yourself you have violated stipulations of the lease."
Defendant ignored the letter and this suit for ejectment ensued.
The above mentioned letter is made part of plaintiff's petition which adopts as grounds for eviction the "reasons therein stated."
The allegation that defendant failed to maintain the premises in the same good order as received at this time is invalid for the simple reason that the condition of which plaintiff complains is caused by the removal of Embers Steak House from the premises; the building has been in no way damaged and defendant stated from the witness stand that by the termination of the lease, a few months hence, the premises would be placed in its original condition before being surrendered to plaintiff.
The charge that defendant caused or permitted unsightly signs to be placed on the premises without the written consent of the lessor is without the least semblance of validity. As stated above, plaintiff resided on the premises and she, of a certainty, should have been cognizant of whatever signs were there and it does not appear that she ever made any complaint to defendant about his erecting or maintaining them. We are not quite sure what signs offended plaintiff or are "dangerous, unsightly, or detrimental to the property" and if it is the removal sign in the window referred to above, then we are sure that said sign is only of a temporary nature intended to inform the patrons of Embers Steak House that it would be, after May 29, 1967, at the new location. We think Embers Steak House, as sublessee, had an absolute right to erect a temporary sign of such nature.
The charge that defendant abandoned a part of the premises and discontinued the use thereof for the purposes for which the property was rented is without foundation. There is no legal obligation resting on Embers Steak House, quoad plaintiff, to remain in the premises until the termination of the lease nor is there any legal obligation resting on defendant to keep his subtenant in the place.
The letter states that defendant has begun the removal of personal property and goods to the prejudice of lessor's lien. Plaintiff's testimony runs as follows:
"Q. Did you see any equipment moved out of your premises?
"A. That's what I just said, air conditioners
"Q. What equipment?
"A. Air conditioners he is taking down.
"Q. Has he removed them from the premises?
"The Court:
"You are going into equipment, now equipment
"The question he is asking is equipment that has been in, is or wasn't being used in the restaurant business.
"The Witness:
"Personally, I haven't seen it, but there is trucks in the morning and neighbors have told me. I don't know."
*456 Defendant denies vehemently he moved anything from the premises except some flagstones, bricks, window frames, bric-a-brac, and stove hoods which were owned by him from time to time and formed no part of the building. All these items, except the stove hoods and bric-a-brac, were stored by plaintiff in an alley which parallels the building.
The charge that the removal of personal property and goods to the prejudice of the lessor's lien is but a "Tempest in a Teapot". During trial of the case counsel for defendant made tender to plaintiff of thirty $100 bills, or $3000 in cash, in full and complete satisfaction of all rent which would become due under the lease to its termination, but plaintiff saw fit to refuse the tender.
It is not clear to us in what "* * * other respects best known to yourself" defendant has violated the stipulations of the lease contract. Counsel for plaintiff makes the extended argument that defendant designedly closed Embers Steak House on May 29, 1967 so as to allow the part of the building occupied by said concern to remain idle for a period of more than six months (the lease expires November 30, 1967) which would in effect cause the license to sell liquor on the premises to expire. Even assuming that to be true, we are not cognizant of any law or ordinance which would operate to affect the right of a future occupant to obtain a license to sell liquor in the leased premises nor have we been cited to any. A liquor license is personal to the licensee, does not belong to the premises and is not assignable or heritable. R.S. 26:75, as amended. The provisions of §§ 5-49 and 5-56 of the Code of New Orleans cited on plaintiff's behalf are inapplicable.
For another reason, the argument advanced by counsel has no place in this case in view of the following facts:
When the current lease was entered into on March 26, 1960, Embers Steak House had no license to sell or dispense liquor, nor did it do so in connection with its restaurant business. The license was not obtained until some months later. Under these circumstances plaintiff cannot be heard to complain that she will be damaged to any extent by reason of the fact that Embers Steak House is discontinuing the dealing in liquor on the premises. Neither defendant nor Embers Steak House owned any duty to the plaintiff to maintain the business of selling liquor in connection with the sublessee's restaurant.
We have carefully studied and analyzed the entire record herein and we do not find that defendant has been guilty of violating the lease to the prejudice of plaintiff.
The lease does provide that all additions, alterations or improvements made by lessee, no matter how attached, (except movable trade fixtures) must remain the property of lessor. Most of the articles which Embers Steak House intends to remove to its new location are movable trade fixtures, but even if they could be considered "additions, alterations or improvements" to the building, we cannot say that they would come within the purview of that part of the lease which provides they must remain the property of the lessor. We say this for the simple reason we do not know, as the evidence does not show, when such additions, alterations or improvements were made. We know nothing of the terms of the initial lease on the premises and it may be that said lease did not contain the clause that all additions, alterations or improvements made by the lessee must remain the property of the lessor. It may well be that if the "additions, alterations or improvements" were made while the original lease was in force they clearly would not remain the property of lessor. The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it. It is only when the additions *457 be made with lime and cement that the lessor may retain them, and only then on paying a fair price. C.C. art. 2726.
In Richardson v. Item Co., 172 La. 421, 134 So. 380, 381, the Supreme Court held that an automatic sprinkler system, attached to the building by the lessee, was not an immovable by destination, and could be removed by lessee under said codal article.
We fail to see how any injury has resulted to or will result to plaintiff. There is no question of the rent involved as the accelerated amount due under the lease was tendered and refused. Defendant is operating a restaurant on the ground floor. He states that when he leaves the premises at the termination of the lease he can and will restore the premises to the exact condition as when the lease was made. We see no substantial reason why the tenant should be ousted and possession restored to the landlord. The abrogation of leases is not favored by the law of Louisiana. In Arbo v. Jankowski, 39 So. 2d 458, the late Court of Appeal for the Parish of Orleans said:
"It is well settled that the abrogation of leases is not encouraged by the law, and a landlord is entitled to a dissolution of the lease only when his right thereto is clear beyond a doubt both of fact and of law. Pumillia v. Johnstone, 10 La.App. 126, 121 So. 198; Purnell v. Dugue, 14 La.App. 137, 129 So. 178; Rosenthal v. Prutsman, No. 8392 of our docket, Opinion Book 59, see Louisiana & Southern Digest (certiorari denied by Supreme Court).
"Furthermore, the power of a landlord to dissolve a lease because the tenant has put the premises to other uses than those intended or specified in the lease is not at all absolute; this is a matter resting entirely within the discretion of the court. New Orleans & Carrollton R. Co. v. Darms, 39 La.Ann. 766, 2 So. 230; Rosenthal v. Prutsman, supra."
For the reasons above stated the judgment appealed from is reversed and it is now ordered, adjudged and decreed that plaintiff's suit for possession be dismissed at her cost in both courts.
Judgment reversed. Motion denied.