391 So.2d 1378 (1980)
Alvin LASSEN
v.
Carlos OTALVARO and Sonia Otalvaro.
No. 11450.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1980.
Rehearing Denied January 19, 1981.
*1379 Jerald N. Andry, Gilbert V. Andry, III, New Orleans, for plaintiff-appellant.
Juan A. Velasco, New Orleans, for defendants-appellees.
Before BOUTALL, SCHOTT and CHEHARDY, JJ.
CHEHARDY, Judge.
Plaintiff, Alvin Lassen, appeals a trial court judgment in his favor and against the defendants, Carlos Otalvaro and Sonia Otalvaro, in solido, in the sum of $1,150 together with legal interest thereon from date of judicial demand until paid and for all costs of the proceedings. The reconventional demand of the defendants was also dismissed at their costs.
Lassen is the owner of a New Orleans residence located at 6220 and 6222 South Claiborne Avenue, which he leased to the defendants for a 24-month period, beginning on July 1, 1977 and ending on June 20, 1979. Monthly rental was $575, payable in advance on the first day of each month.
On June 2, 1978, the plaintiff-lessor filed suit for breach of contract, claiming the defendants-lessees had failed to pay the rent for the months of May and June. On June 12, 1978, the plaintiff filed a rule for possession, asserting that he had caused a 5-day notice to vacate to be served on the defendants for nonpayment of rent, and that they had failed to comply.
Judgment on the rule was rendered on June 23, 1978, and the defendants were ordered to vacate the subject premises by 12 noon, Thursday, June 29, 1978.
On July 8, 1978, plaintiff filed a supplemental and amending petition alleging that defendants were liable for the rent at the rate of $575 per month for the months of March, April and May, and June 1 through June 3. In addition, the plaintiff claimed liquidated damages in accordance with the lease contract for failure to deliver possession when required to do so on June 3, 1978, and for damages caused to the property during defendants' occupancy.
At the trial on the merits of the main demand it was established the complaints made by lessees included that the house was too hot due to a skylight in the living room-dining room area; the exterior paint was peeling; and there were roaches on the property. In response, Mrs. Lassen testified she had the skylight covered, had the exterior paint repaired, and referred Mrs. Otalvaro to a pest control service regarding the roaches. She added she had a fence installed around the property at Mrs. Otalvaro's request and paid a gardener to cut the grass during the warm weather months. Additionally, Mrs. Lassen explained she had a repairman check some of the heaters in the house; however, he discovered the Otalvaros had not had the gas connected.
Mrs. Otalvaro testified she, her husband and six children slept downstairs in the house in the winter because the upstairs was too hot; the downstairs of the house in winter was too cold because of drafts around the doors; one bathroom was without ventilation (a problem that was eventually remedied by Mrs. Lassen); there were holes in the kitchen; the second paint job started to peel; inadequate wiring in the house precluded the use of portable heaters, and the house shook due to the passage of vehicles on South Claiborne Avenue.
One of the defendants' exhibits was a letter dated May 1, 1978, that Mrs. Otalvaro testified she mailed to Mrs. Lassen reiterating what she considered the problems in the house and offering to terminate the lease providing Mrs. Lassen would compensate the defendants for added expenses, inconvenience and damages. Mrs. Lassen, however, testified she never received the letter, and it was established the address on the letter was incorrect and differed from her address as listed on the lease.
Although the defendants were able to show the trial court they had paid rent for the months of March and April of 1978, they were unable to contravene the plaintiff's records and establish that any payment was made for the months of January, February, May and June of 1978.
*1380 The defendants testified they actually moved from the premises, in response to the district court's order, on June 30, 1978.
The lease which was executed between the parties states in part:
"Lessor warrants that the leased premises are in good condition except as otherwise stipulated herein. Lessee accepts them in such condition and agrees to keep them in such condition during the term of the lease at his expense and to return them to Lessor in the same condition at the termination of the lease, normal decay, wear and tear excepted.
"Lessor agrees to deliver the premises broom clean and free from trash at the beginning of the lease and Lessee agrees to return same in like condition at the termination of the lease.
"No repairs shall be due Lessee by Lessor except to the roof and such as may be rendered necessary by fire or other casualty, not occasioned by Lessee's fault or negligence. Lessee agrees to report in writing to Lessor any damage to the leased premises within twenty-four hours after its happening, and upon his failure to do so, Lessee shall be bound to repair any consequent or resulting damage."
In giving reasons for his decision the district court judge stated:
"The Court was impressed with the testimony of the defendants, Carlos Otalvaro and Sonia Otalvaro, with reference to the defective condition of the house. The plaintiff had notice of the detailed complaints.
"However, non-payment of rent is not the remedy the defendants should have sought. Rather, after the plaintiff had been given notice of defects and a reasonable time for repairs had passed, the defendants should have had the repairs made and charged the cost of such to the plaintiff.
"The house did have some utility for the defendants. Four months of rent were not paid, namely, January, February, May and June.
"The Court is of the opinion that the defendants owe the plaintiff a reasonable sum for the occupancy and use of the premises. The Court is of the further opinion that one-half of the amount due, i. e., $1150.00, is reasonable."
We cannot agree. Concerning the obligations and rights of lessees and lessors, the applicable codal articles state:
"The lessor is bound from the very nature of the contract, and without any clause to that effect:
1. To deliver the thing leased to the lessee.
2. To maintain the thing in a condition such as to serve for the use for which it is hired.
3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease." LSA-C.C. art. 2692.
"The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed." LSA-C.C. art. 2693.
"If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable." LSA-C.C. art. 2694.
This court, in the factually similar case of Bruno v. Louisiana School Supply Company, Inc., 274 So.2d 710 (La.App. 4th Cir. 1973), stated at pages 711-712:
"LSA-C.C. art. 2712 clearly provides that `the lessee may be expelled from the property if he fails to pay the rent when it becomes due.' Our Supreme Court has decreed that the failure of a lessor to accomplish necessary repairs is not justification for the lessee's refusal to pay rents when due. Mullen v. Kerlec, 115 La. 783, 40 So. 46 (1905).

*1381 "Rather, there are two remedies available to the aggrieved lessee. Under LSA-C.C. art. 2694 if, after being put on notice, the lessor refuses or neglects to make repairs, ` * * * the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable. Alternatively, the lessee may sue for cancellation of lease on the authority of LSA-C.C. art. 2729. The jurisprudence has consistently recognized these courses of action which have recently been reaffirmed in Reed v. Classified Parking System, 232 So.2d 103 (La.App. 2d Cir. 1970).
"In the intent case, LASSCO withheld rents for some seven months without formally putting Bruno on notice or attempting to procure the alleged necessary repairs itself. It therefore follows that the failure of the lessee to pay the rental or to avail itself of the rights granted by LSA-C.C. arts. 2694 or 2729 constituted a breach of the lease. Under the codal provisions and jurisprudence cited above, the judgments of eviction and for delinquent rental were clearly correct."
In the present case, as in Bruno, supra, the defendants-lessees claim a remedy that the law does not afford them, since they neither sued for dissolution of the lease nor caused any alleged necessary repairs to be made, deducting the price from the rent due. Accordingly, this court must award the plaintiff the total amount of delinquent rental that was due.
The subject lease also states:
"In case an Attorney be employed to protect any right of Lessor or Lessee arising under this lease, the party whose actions or inactions necessitate such employment shall pay additionally a reasonable attorney's fee."
Plaintiff should therefore be awarded reasonable attorney's fees.
Regarding liquidated damages claimed by the plaintiff for defendants' failure to deliver possession of the premises at the termination of the lease, we note that document's following provision:
"At the expiration of this lease or at its termination for other causes, Lessee is to immediately surrender possession by actual delivery of all keys to Lessor. Should Lessee fail to deliver such possession, he consents to pay as liquidated damages five times the rent per day for each day of his failure to do so, with attorney's fees and all costs."
Since the defendants were ordered by the district court to vacate the premises by noon on June 29, 1978, and the Otalvaros, by their own admission, did not abandon the house until the next day, June 30, 1978, this court will award liquidated damages of five times the rent for the additional day of occupancy. As reasonable attorney's fees, we will allow one-third of $2,369, the amount collected.
For the reasons stated above, the trial court decision is amended in favor of the plaintiff, Alvin Lassen, and it is hereby ordered that the defendants, Carlos Otalvaro and Sonia Otalvaro, are recast in judgment in the sum of $2,300 for four months of rent not paid, together with legal interest thereon from the date of judicial demand, $789.66 in attorney's fees; and $69 in liquidated damages due under the terms of the lease for the June 30, 1978 occupancy of the subject premises. In all other respects the judgment of the trial court is affirmed.
AMENDED IN PART; AFFIRMED IN PART; AND RECAST.