SANDRA CABRINA JENKINS, Judge.
| ¶ This case arises out of a landlord-tenant dispute over the obligations of each party under the terms of a Sublease agreement.[1] The plaintiffdandlord, 727 Toulouse, L.L.C. (“Toulouse”), filed a petition for eviction against the defendanfytenant, The Bistro at the Maison De Ville, L.L.C. (“Bistro”), for failure to pay rent. Bistro contends that it did not have an obligation to pay rent because Toulouse breached the terms of the Sublease by removing two heating, venting, and air conditioning units (“HVAC units”) that serviced the tenant’s premises. Bistro filed a declinatory exception of lis pendens in this case, and the district court ruled that the exception had been waived because Bistro failed to timely plead the exception. Toulouse then filed a motion for summary judgment in the district court, which was granted, thereby evicting Bistro. In the same proceeding, the district court heard Toulouse’s motion to strike the amended affidavit of Mr. Gerald Tharp, which was also granted. Bistro appeals the district court judgments ]2denying the exception of lis pendens, granting summary judgment in favor of *1155 Toulouse, and striking the amended affidavit of Mr. Gerald Tharp. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Toulouse owns the property located at 727 Toulouse Street in the French Quarter, and leases the property located at 733 Toulouse Street from Mon-Tay Enterprises (“Mon-Tay”). Pursuant to the terms of an Act of Sale of Property and Assignment of Ground Lease dated October 29, 2010, Toulouse assumed a sublease to Bistro of the first floor and the courtyard area of 733 Toulouse Street. The sublease agreement (“Sublease”) was originally entered into by Hertz New Orleans One, L.L.C. and Bistro on May 7, 2007, for the express use of the premises by tenant, Bistro, as a fine dining restaurant. The term of the Sublease was set from the effective date, May 7, 2007, until July 31, 2014, unless terminated prior to that expiration as provided for within the Sublease.
In 2011, Toulouse began performing renovations to the property it owned at 727 Toulouse Street. During the renovations, Toulouse discovered that two HVAC units that served Bistro’s restaurant, at 733 Toulouse, were on an equipment platform in the alley between the two properties, and that the platform was attached to 727 Toulouse. Toulouse and Bistro communicated, in meetings and emails, about the need to relocate the HVAC units in order for Toulouse to perform necessary renovations. Toulouse also consulted and sought approval from the |sVieux Carre Commission and the Louisiana State Fire Marshall regarding the renovations.
On August 5, 2011, Toulouse sent written notice via email to Bistro and Mon-Tay (the owner of 733 Toulouse Street) that Toulouse would remove the HVAC units on August 22, 2011 in order to proceed with the planned renovations to 727 Toulouse that included removing the platform in the alley. Toulouse notified Bistro and Mon-Tay that the HVAC units were located on Toulouse’s property and needed to be moved before August 22, 2011 or Toulouse would remove the HVAC units. Neither Bistro nor Mon-Tay took any action to remove or relocate the HVAC units. On August 22, 2011, Toulouse removed the HVAC units, which resulted in the loss of air conditioning for Bistro. Bistro closed the restaurant the same day and never re-opened for business.
Bistro did not pay Toulouse rent for the month of September, which was due on or before the first day of the month according to the terms of the Sublease. On September 13, 2011, Toulouse sent written notification (“Notice”) to Bistro that, under the express terms of the Sublease, Bistro was in default for failure to pay the monthly rent within 10 calendar days after rent was due. Toulouse further stated in the Notice that it was exercising its right to terminate and cancel the Sublease effective immediately.
Prior to receiving the Notice from Toulouse, on September 9, 2011, Bistro filed a petition in district court for preliminary injunction and mandatory injunction (“Injunction” suit) to enjoin Toulouse from evicting Bistro and to direct Toulouse Uto restore the HVAC units that serviced Bistro’s leased premises.[2] Although Bistro did not reopen the restaurant after August 22, 2011, Bistro claimed a legal right to occupy the premises and to a total abatement of rent payments based on the provisions of Louisiana Civil Code article 2715. *1156 (Bistro also raises this argument in opposition to summary judgment in this case.)
When Bistro did not deliver possession of the leased premises to Toulouse following the written notification sent on September 13, 2011, Toulouse filed a petition for eviction in a separate suit (“Eviction”) in the district court on October 19, 2011. Both eases were assigned to the same section of the district court.
On November 4, 2011, Bistro filed in this Eviction case declinatory exceptions of insufficiency of citation and insufficiency of service of process, and peremptory exception of no cause of action.[3]
Then on January 25, 2012, Bistro filed in this Eviction case declinatory exceptions of insufficiency of citation and insufficiency of service of process, and lis pendens, with a request for expedited hearing. On the same day, Bistro also filed a motion for leave to amend and correct the captions on two memoranda and two notices filed in the Eviction suit that were directed to and intended for the Injunction suit filed by Bistro. The incorrectly captioned filings did not include the declinatory exceptions filed on November 4, 2011.
Ijn its opposition to the declinatory exceptions filed on January 25, 2012, Toulouse argued.that Bistro had made several appearances before the court in both proceedings, had participated in a scheduling order for both proceedings, had been served through counsel and by other accepted methods of service, and had waived the exception of lis pendens by failing to include that exception with its first pleading of exceptions in the Eviction case. On February 17, 2012, at the hearing on the exceptions, the district court denied each of the exceptions filed by Bistro and ruled that lis pendens had been waived.
On March 15, 2012, Toulouse moved for summary judgment in the Eviction ease. Attached to its motion, Toulouse submitted a transcript of the motion for summary judgment hearing in the Injunction suit on March 9, 2012, and noted the district court had granted summary judgment in favor of Toulouse on the basis that Bistro had not availed itself of a proper legal remedy by ceasing to pay rent when Toulouse removed the HVAC units.[4] The district court had denied any injunctive relief to Bistro and found it was in default of the Sublease.[5]
In opposition to Toulouse’s motion for summary judgment on the Eviction, Bistro reasserted its argument that Bistro had a right to complete diminution of rent after Toulouse removed the HVAC units based on the provisions of La. C.C. art. 2715 (which we will discuss later in this opinion), and contended that the amended affidavit of Mr. Gerald Tharp,[6] submitted with *? the opposition memorandum, | ñdemonstrated genuine issues of material fact in this case and thereby precluded summary judgment.
On March 29, 2012, the district court heard arguments on the motion for summary judgment on the Eviction and the motion to strike the amended affidavit of Mr. Gerald Tharp. Referencing the district court’s previous summary judgment in the Injunction case, Toulouse stated that the district court had already found that Bistro was in default because it had not paid any rent since August 2011 and that Toulouse was entitled to summary judgment for eviction. As to the affidavit, Toulouse argued that the amended affidavit submitted by Bistro still contained inconsistent statements compared to the first affidavit Mr. Tharp had completed on behalf of Toulouse and that, except for a few extracted sentences referencing Toulouse’s counsel, it was the same affidavit that had been struck by the district court in the Injunction hearing on March 9, 2012. Bistro stated that the amended affidavit should be admissible because it had removed the “objectionable error” regarding Toulouse’s counsel and had reviewed the other statements with the affiant. As to the eviction, Bistro asked the court to take the matter under advisement and review La. C.C. art. 2715, which Bistro argued would allow for the total diminution of rent by operation of law in this case. The district court granted the motion to strike the amended affidavit, stating only that the district court had |7“huge problems with it,” and granted the summary judgment in favor of Toulouse without stating any reasons.
Bistro timely filed this devolutive appeal and asserts three assignments of error with respect to the district court’s rulings on the exception of lis pendens, on the motion for summary judgment in favor of Toulouse, and on the motion to strike the amended affidavit of Mr. Gerald Tharp in favor of Toulouse. We will discuss each assignment of error in the order presented and under the applicable standard of review.
DISCUSSION
Exception of Lis Pendens
In its first assignment of error, Bistro contends that the district court erred in ruling that Bistro’s declinatory exception of lis pendens was waived. Bistro contends that the district court should have dismissed the Eviction action in accordance with the provisions of La. C.C.P. art. 1061, which mandates that defendants assert through compulsory reconventional demand all causes of action against the plaintiff arising out of the same transaction or occurrence that is the basis for plaintiffs action.
The district court’s ruling on Bistro’s exception of lis pendens is a question of law, and the standard of review of the appellate court in reviewing a question of law is whether the court’s interpretive decision is legally correct. Glass v. Alton Ocshner Med. Found., 02-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405 (citing Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709, 712 (La.App. 4 Cir.1992)). If the decision of the district court is based upon an erroneous application of the law rather than on a valid exercise of discretion, then the decision is not due deference *1158 by the reviewing court. Duhon v. Briley, 2012-1137, p. 4 (La.App. 4 Cir. 5/23/13), 117 So.3d 253, 258 (citing Pelleteri v. Caspian Grp. Inc. 02-2141, 02-2142, p. 7 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1235; Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C, 10-1303, p. 4 (La.App. 4 Cir. 9/21/11), 75 So.3d 471, 474.).
La. C.C.P. art. 531 explains the procedural device of lis pendens as follows:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
La. C.C.P. art. 925(A)(3) provides that an exception of lis pendens is properly raised by declinatory exception, and paragraph (C) provides, “[a]ll objections which may be raised through the declinatory exception ... are waived unless pleaded therein.” Finally, La. C.C.P. art. 928 requires that declinatory exceptions “shall be pleaded prior to or in the answer and, prior to or along with the filing of any pleading seeking relief ... and in any event, prior to the confirmation of a default judgment.”
The record in this case reflects that Bistro filed declinatory exceptions of insufficiency of citation and insufficiency of service of process and peremptory exception of no cause of action on November 4, 2011. Bistro did not raise the | declinatory exception of lis pendens in that first set of exceptions.[7] On January 25, 2012, Bistro filed a second set of declinatory exceptions that included the exception of lis pendens. At the hearing on the exceptions on February 17, 2012, Bistro contended that it did not intend to file any pleadings in the Eviction case prior to the exceptions filed on January 25, 2012, and that the previous filings were incorrectly captioned and meant to be filed in the Injunction suit. A simple reading of the declinatory exceptions filed in this Eviction on November 4, 2011, belies Bistro’s contention. The district court ruled that the exception of lis pendens had been waived based on the fact that it was not plead along with the other declinatory exceptions filed on November 4, 2011. We find no error in this ruling.
Bistro attempts to overcome its failure to timely plead the exception of lis pendens by arguing that the provisions of La. C.C.P. article 1061 regarding compulsory reconventional demand trump the procedural requirements of La. C.C.P. arts. 925 and 928. We find this argument to be without merit, and we will briefly address how these procedural devices work together to promote judicial efficiency and fairness.
La. C.C.P. art. 1061(B) provides in pertinent part, “[t]he defendant in the principal action ... shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.”
| inThe Third Circuit appropriately addressed the interplay of compulsory recon-ventional demand, lis pendens, and res ju-dicata in Long v. Minton, 01-1361, p. 2 (La.App. 3 Cir. 3/6/02), 809 So.2d 1242, 1243, by stating:
In Hy-Octane Investments v. G & B Oil Prod., 97-28 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057, this court discussed an exception of lis pendens that *? was premised on the compulsory reeon-ventional demand theory. We held that the doctrine of res judicata requires a party to assert all rights and causes of action that arise out of the same transaction or occurrence that is the foundation of the plaintiffs action. This requirement promotes judicial efficiency and fairness in the resolution of intrinsically related claims in the same forum. We reversed the trial court’s decision to overrule the defendant’s lis pendens exception, explaining that the claim for breach of contract should have been brought as a reconventional demand in the original action for wrongful termination of the same contract. As in the instant case, the proper exception was lis pendens, not res judicata, because there was no final judgment in the original action at the time the second suit was filed.
Without discussing whether Bistro would have been successful in arguing a timely plead exception of lis pendens, we find that the filing of such an exception was the proper method to object to a second suit being filed by Toulouse involving the same parties in the same capacities and ostensibly the same transaction or occurrence as the first suit. See Sauer v. Johnson, 12-0197, pp. 6-7 (La.App. 4 Cir. 12/13/12), 106 So.3d 724, 728. The procedural device of lis pendens serves as an alternate guard against a multiplicity of suits and provides for judicial efficiency in the same manner as compulsory reconven-tional demand. When each device should be used depends on the status of pending actions between the parties, the standing of the parties, and the facts and circumstances particular to the actions. In any event, the procedural requirements for pleading the exception must be followed. Appellant’s argument is without merit.
| nMotion for Summary Judgment
In its second assignment of error, Bistro contends that the district court erred in granting Toulouse’s motion for summary judgment on the basis that Bistro was entitled to complete diminution of rent while continuing to occupy the premises under the provisions of La. C.C. art. 2715. Bistro maintains that the district court misapplied Louisiana law and that La. C.C. art. 2715 allows for the complete diminution of rent by operation of law when the use of the leased premises becomes substantially impaired by no fault of the lessee. Bistro contends that it was entitled to rely on that codal provision after Toulouse removed the HVAC units leaving the premises substantially impaired and unusable as a restaurant.
Appellate courts review a trial court’s grant of summary judgment de novo using the same standard applied by the trial court in deciding the motion for'summary judgment. St. Bernard I, L.L.C. v. Williams, 12-0372, p. 5 (La.App. 4 Cir. 3/13/13) 112 So.3d 922, 926; Foundation Materials, Inc. v. Carrollton Mid-City Investors, L.L.C., 10-0542, p. 4 (La.App. 4 Cir. 5/25/11), 66 So.3d 1230, 1233. “An appellate court thus asks the same questions- as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-ap-pellee] is entitled to judgment as a matter of law.” St. Bernard, 112 So.3d at 926 (quoting Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750).
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that _jjgthere is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. *1160 966(B)(2). If the moving party has made a prima facie case that the motion should be granted, then the burden shifts to the non-moving party to establish that a material factual issue remains. “[T]he nonmoving party may not rest on the mere allegations or denials of his pleadings, but the non-moving party’s response, by affidavits or with other competent evidence as provided by law, must set forth specific facts showing that a genuine issue of material fact exists for trial. La. C.C.P. art. 967B.” Foundation Materials, 66 So.3d at 1233.
In its motion for summary judgment, Toulouse stated, “[gjiven this Court’s order granting 727 Toulouse’s summary judgment motion on the basis that Bistro failed to pay monthly rent, of which this Court can take judicial notice, there are no genuine issues of material fact precluding this Court from granting summary judgment now ... 727 Toulouse terminated the sublease on the basis of Bistro’s failure to pay rent which the Court agreed was a default and/or breach by Bistro under the sublease.”[8] In support of its motion, Toulouse attached the Sublease agreement, the Notice of default sent to Bistro on September 13, 2011, an affidavit of Richard Poe, III (owner of 727 Toulouse), and a transcript of the hearing on the motion for summary judgment on March 9, 2012 in the Injunction case. The 11sattached Notice references the specific sections of the Sublease governing the tenant’s default with which Bistro failed to comply (failure to pay any installment of rent within 10 calendar days of the due date; failure to open for business at the premises for 14 consecutive days without advance notice and approval) and which allow for cancellation of the Sublease effective immediately, without the necessity of putting tenant in default. The affidavit of Richard Poe, III, the sole member of 727 Toulouse, L.L.C., also attests to the fact that Bistro did not pay rent for the month of September, 2011.
Toulouse further argued that it was entitled to summary judgment as a matter of law even without regard for the district court’s findings and judgment in the Injunction case. Toulouse acknowledged that it had removed the HVAC units (on the grounds that the units were improperly located on Toulouse’s property at 727 Toulouse Street and needed to be removed/relocated for Toulouse to perform renovations), but argued that, under the explicit terms of the Sublease, Toulouse was not responsible to furnish, maintain, repair, or replace any HVAC equipment serving Bistro’s premises. Toulouse maintained that, even if there is a dispute over the obligations of each party under the terms of the Sublease, Bistro was still not entitled to withhold or abate the payment of rent on the basis that Louisiana law only allows a lessee who is aggrieved by a lessor’s failure to remedy an alleged defect in the premises to seek certain remedies: (1) terminate the lease and surrender the premises to the lessor, while reserving a right for damages; (2) make the necessary repairs and deduct the reasonable costs from the rent; or [ ^alternatively, (3) continue to fulfill the ongoing obligation of *? rent payments but sue to judicially obtain a diminution in rent.
Toulouse cited Keever v. Knighten, 532 So.2d 826 (La.App. 4 Cir.1988), as a case directly on point, in which the lessee abandoned the leased premises and failed to pay rent for the remainder of the lease term claiming that the lessor’s failure to repair the inoperative air conditioning unit had caused the premises to become unusable and thus had justified the abatement of rent. Toulouse pointed out that, in Keever, regardless of the parties’ dispute over the designation of responsibility to provide air-conditioning, the district and appellate court held in favor of the lessor due to the lessee’s failure to pay rent and abandonment of the property.[9]
In its opposition motion to the district court and in its appeal to this Court, Bistro argues that, by removing the HVAC units, Toulouse breached its implied warranty of maintaining a habitable climate for Bistro and violated Bistro’s right to peaceful possession in the leased premises. Bistro cites a case from 1930, Purnell v. Dugue, 14 La.App. 137, 129 So. 178 (1930), to support its argument that a lessor’s obligation to furnish sufficient air-conditioning and heating systems to make the leased premises habitable is well-established under Louisiana law. Bistro then argues that the removal of the HVAC units resulted in the substantial impairment of the uses of the premises as a restaurant, at which point Bistro was entitled to complete diminution of rent in accordance with the provisions of La. C.C. 2715.
| ^Louisiana Civil Code article 2715 provides in pertinent part,
If, without the fault of the lessee, the thing is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.
Bistro argues that art. 2715 must be interpreted to allow for complete diminution of rent by operation of law without any requirement that the lessee take judicial action to obtain that diminution. We do not find merit in this argument.
First, we are not persuaded by Bistro’s contention that a lessor has an obligation to provide air conditioning as part of the lessor’s warranty to maintain the premises in a suitable condition. See La. C.C. art. 2682. In Louisiana, contracts have the force of law between the parties, and the parties may choose to define their obligations by their own terms. Good v. Saia, 08-0682, p. 5 (La.App. 4 Cir. 4/8/09), 9 So.3d 1070, 1074; see also, La. C.C. art. 1983. “The Civil Code ... while defining and governing the relationship of the parties to a lease, still leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Code which govern their lease relationship.” Carriere v. Bank of Louisiana, 95-3058 (La.10/31/97), 702 So.2d 648, 666 (on reh’g).
In the case before us, the parties were bound together by a Sublease agreement that outlined the rights and obligations of each in various respects, including the responsibility for utility services, alterations to the premises, maintenance of the condition of the premises, and the maintenance, repair and/or | ^replacement *1162 of heating, ventilating and air conditioning. We find, however, in this case as we did in Keever, “no need for us to unravel the apparently inconsistently intertwined provisions of this lease.” 532 So.2d at 827. Regardless of the obligation to provide, maintain, repair, or replace the HVAC units, it is undisputed that Bistro failed to pay rent in September 2011, or anytime thereafter, and failed to reopen the restaurant after closing on August 22, 2011. Both of these obligations are clearly stated in the Sublease as grounds for default and cancellation of the lease.[10]
Where a lessee finds that the leased thing requires repairs or has been destroyed, lost, or expropriated, Louisiana law provides specific remedies to the lessee. If during the lease the thing requires repair, and the lessor fails to perform his obligation to make necessary repairs within a reasonable time, the lessee has the option to make the repairs and deduct the reasonable cost of repair from the rent due, or else, to terminate the lease and surrender the premises to the lessor. La. C.C. art. 2694; Keever, 532 So.2d 826; Lassen v. Otalvaro, 391 So.2d 1378 (La. App. 4 Cir.1980); Degrey v. Fox, 205 So.2d 849, 851 (La.App. 4 Cir.1968) (citing Mulhaupt v. Enders, 38 La.Ann. 744 (La.1886).) If the leased premises is lost or totally destroyed, or wholly, expropriated by no fault of either party, then the lease terminates by operation of law. La. C.C. art. 2714; Haddad v. Elkhateeb, 10-0214, 10-0308, p. 14 (La.App. 4 Cir. 8/11/10), 46 So.3d 244, 255. Whereas, if the |17Ieased premises is only partially lost or destroyed, or its use is substantially impaired, then the lessee may obtain a diminution of rent or dissolution of the lease, whichever is more appropriate under the circumstances. La. C.C. art. 2715.
Bistro did not seek any of the available remedies under Louisiana law, but rather Bistro claimed a remedy that the law (both statutory and as between the parties) does not provide by refusing to pay rent and refusing to surrender possession of the premises. Bistro’s interpretation of La. C.C. art. 2715 would allow a lessee to unilaterally diminish rent payments in any amount the lessee sees fit, including complete diminution. This has no basis in reason or jurisprudence.[11] We find that *1163 the provision in La. C.C. art. 2715 stating that “the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease” could be interpreted to allow the lessee to obtain the diminution or dissolution by agreement of both parties or to seek and obtain the appropriate remedy by suit, but the lessee’s unilateral decision to refuse to pay rent and remain in occupancy of the premises was an improper “self-help” remedy.[12]
| ^Accordingly, we find that the district court properly applied the applicable Louisiana law in determining that Toulouse was entitled to the eviction as a matter of law.
Before we conclude that the district court properly granted the Motion for Summary Judgment in favor of Toulouse, we must address the district court’s ruling to strike the amended affidavit of Mr. Gerald Tharp that Bistro submitted in opposition to the motion for summary judgment. Motion to Strike the Amended Affidavit of Mr. Gerald Tharp
In the final assignment of error, Bistro maintains that the district court erred in striking the amended affidavit of Mr. Gerald Tharp because the affidavit was based on the personal knowledge of the affiant, and it created genuine issues of material fact that precluded summary judgment in favor of Toulouse.
As stated previously in this opinion, the adverse party to a motion for summary judgment may not rest on the allegations or denials of his pleadings but must set forth specific material facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). “[A] ‘fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.’ ” Jones v. Estate of Santiago, 03-1424, p. 6 (La.App. 4 Cir. 4/14/04), 870 So.2d 1002, 1006 (quoting Smith, 639 So.2d at 750.). Affidavits supporting or opposing motions for summary judgment must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. [ lflLa. C.C.P. art. 967; Daret v. Halmar Constr. Co., 505 So.2d 69, 71 (La.App. 4 Cir.1987); Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978). “Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment.” Foundation Materials, 10-0542, p. 7, 66 So.3d at 1235 (citing Hibernia Nat. Bank v. Rivera, 07-962, p. 9 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 540). Evidentiary rulings by the trial court are reviewed under an abuse of discretion standard. In re Succession of Holzenthal, 12-0211, p. 8 (La.App. 4 Cir. 9/26/12), 101 So.3d 81, 87.
The record reflects that the affidavit Bistro submitted in opposition to Toulouse’s motion for summary judgment in this Eviction case was an amended version of the affidavit Bistro submitted in opposition to the summary judgment in the Injunction case. Having reviewed the transcript of the hearing in the Injunction case on March 9, 2012, we note that the district court ruled to strike the first affidavit of Mr. Gerald Tharp on the basis that it contained statements regarding representations made to the district court that the court knew to be false. At the *1164 hearing on the motion for summary judgment in the instant case, Toulouse pointed out that the amended affidavit was almost identical to the affidavit Bistro previously submitted to the district court. Toulouse further argued that the statements within either of the affidavits submitted by Bistro contained contradictory statements to the affidavit of Mr. Tharp submitted by Toulouse in October, 2011 in opposition to Bistro’s Injunction case. Bistro argued that it had |2nremoved the “objectionable error,” but in ruling to strike the amended affidavit, the district court stated that it still found “huge problems” with the affidavit.
All three affidavits of Mr. Gerald Tharp are in the record before this Court, and we note that there are contradictory statements from Mr. Tharp in the second and third affidavits compared to the original affidavit submitted by Toulouse regarding the parties’ dispute over the responsibility for the HVAC units. Based on our review of the record, we do not find that the district court abused its discretion by striking the amended affidavit submitted by Bistro in opposition to the motion for summary judgment.
We further find that Bistro did not present any genuine issues of material fact beyond the allegations contained in its pleadings and arguments to the district court in opposition to the motion for summary judgment. Thus, we find that the district court properly granted the motion for summary judgment in favor of Toulouse as a matter of law.
CONCLUSION
For all the foregoing reasons, we affirm the judgment of the district court in this case.
AFFIRMED

. This case is one of three cases brought in the district court by the same parties arising out of the same set of facts, but the cases were not consolidated in the district court. We will reference the separate suits only in so far as is necessary to set forth the factual and procedural history of the case before this Court.

. Bistro also sought damages for breach of contract and declaratory judgment that Toulouse breached the Sublease and Bistro was not obligated to pay rent.

. On November 4, 2011, the parties were present in the district court for rule hearing proceedings in which the case numbers for both the Injunction suit filed by Bistro and this Eviction suit were called out by the clerk. Counsel for Bistro stated that he had filed the exceptions only in the Eviction case. The district court did not hear argument or rule on the exceptions on that day because the court and Toulouse had just received them.

. Toulouse also attached to the motion for summary judgment a copy of the Sublease, a copy of the Notice sent to Bistro on September 13, 2011, and the affidavit of Richard C. Poe II (the sole member of 727 Toulouse, L.L.C.).

. Bistro had asserted four causes of action in its original petition in the Injunction case. The March 9, 2012 judgment was a partial summary judgment that did not dispose of all the causes of action.

. Bistro submitted an affidavit of Mr. Gerald Tharp in the summary judgment proceedings in the Injunction suit on March 9, 2012. Toulouse, the defendant in the Injunction case, moved to strike that affidavit. According to the transcript of the March 9 proceedings in *? the Injunction which was made part of the record before this Court, the district judge granted the motion to strike the entire affidavit of Mr. Gerald Tharp based on the finding that the affidavit was in conflict with a previous affidavit of Mr. Tharp submitted on behalf of Toulouse and the finding that the affidavit contained false and inappropriate statements.

. See supra note 3.

. We note that the district court and this Court may take judicial notice of the ruling in the Injunction case because it is generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. La. C.E. art. 201(B); Perez v. Evenstar, 12-0941, p. 10 (La.App. 4 Cir. 1/30/13), 108 So.3d 898, 905. Here, both cases were before the same district court judge. Thus, the adjudicative facts in the Injunction case are within the general and specific knowledge of the district court and the attached transcript of the hearing and ruling in that case cannot reasonably be questioned as accurate.

. In its memorandum in support of the motion, Toulouse reminded the district court that it had relied on Keever for granting summary judgment in favor of Toulouse in the Injunction case.

. Section 22(A) of the Sublease provides for default, "(a) If Tenant fails to pay any installment of rent within ten (10) calendar days after the date on which it is due; ... (e) Tenant fails to open for business at the Premises for fourteen (14) consecutive days, unless Tenant gives Landlord at least thirty (30) days advance notice that the business will not be open for a period less than sixty (60) days for maintenance, repair, or alteration.” Section 22(B) allows for the landlord to put tenant in default without further notice if any of the above occur, and shall have the right to proceed for all past due rent and cancelling and terminating the lease immediately.

. In Degrey, the lease contained the following provision:
'If through no fault, neglect, or design of Lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this lease shall be can-celled. If, however, the premises can be repaired within 120 days from date of fire or casualty, then this lease shall not be cancelled, and Lessor shall notify Lessee within 30 days from the date of fire or casualty that Lessor will repair the damage, and Lessee shall be entitled only to such a reduction or remission of rent as shall be just and proportionate.’ (emphasis added)
205 So.2d at 850. This Court found that neither the jurisprudence nor codal articles allowed for the lessee's unilateral reduction of rent according to what he thought was appropriate until the repairs were made. This Court held that, outside of seeking an appropriate and available remedy under the law, the lessee did not have the right to retain the use and occupancy of the leased premises without full payment of the stipulated rent. Id. at 852.

. As this Court stated in Keever, "If lessees bore the responsibility, then their failure to pay rent and their abandonment of the premises was improper. And if lessor bore the responsibility, lessee’s 'self-help' remedy of failing to pay rent and abandoning the property was improper.” 532 So.2d at 827.